ORDERED.

**Dated: May 17, 2021**

_Karen S. Jennemann_
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Edward S. Burke, | ) | Case No. 6:19-bk-04254-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| Catherine A. Crossman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 6:19-ap-00329-KSJ |
| | ) | |
| Edward S. Burke, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION FINDING DEBT NOT DISCHARGEABLE

On April 30, 2009, Debtor, Edward S. Burke, shot his now former wife, the Plaintiff, Catherine Crossman, severely injuring her and her dog, Charlotte. He says it was not intentional. She argues the injury was intentional, willful, and malicious,

and his debt to her is not dischargeable under § 523(a)(6) of the Bankruptcy Code.[1] Concluding that Burke intended to cause "willful and malicious injury," I find the debt is not dischargeable.[2]

Section 523(a)(6) of the Bankruptcy Code is straightforward and excepts debts from discharge for "willful and malicious injury by the debtor to another entity or to the property of another entity."[3] To prevail on such a claim, "a plaintiff must prove by a preponderance of evidence that a debtor 1) deliberately and intentionally, 2) injured plaintiff or plaintiff's property, by 3) a willful and malicious act."[4] "[A]n injury is willful when a debtor commits an intentional act for the purpose of causing injury or which is substantially certain to cause injury."[5] An act that is merely reckless is not a "willful act" for § 523(a)(6).[6] An act is malicious if it is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[7] The Supreme Court clarified that non-dischargeability of a debt under § 523(a)(6) takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.[8] The established law is clear that a debtor must commit an intentional tort or tort-like conduct directed against the claimant or his property for a court to find a debt non-dischargeable under § 523(a)(6).[9]

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et. seq.*
[2] A trial was held on April 19, 2021 and continued through April 20, 2021.
[3] 11 U.S.C. § 523(a)(6).
[4] *Conseco v. Howard (In re Howard)*, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001).
[5] *Id.* (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995)).
[6] *Id.*
[7] *Id.* (quoting *In re Walker*, 48 F.3d at 1163-64).
[8] *Kawaauhau v. Geiger*, 523 U.S. 57, 59, 61-64, 118 S. Ct. 974, 975-76, 977-78 (1998).
[9] *Kalmanson v. Nofziger (In re Nofziger)*, 361 B.R. 236, 243 (Bankr. M.D. Fla. 2006).

What actually happened on the evening of April 30, 2009, is clouded by the passage of time, liquor, Crossman's serious brain injury, and prior inconsistent stories told by both Burke and Crossman. This is largely a "he said/ she said" case of disputed facts. Neither party submitted any convincing corroborating evidence, such as expert, scientific, or forensic testimony, to buttress their narrative. Thus, we can only look at what we know clearly happened to evaluate the conflicting testimony of Burke and Crossman.

We know the parties were married and had a tumultuous marital relationship. They lived in separate rooms in the same house, and each had their own dog. Crossman owned Charlotte, a small purebred King Charles Spaniel, who weighed around twelve pounds. Burke, a prominent local radio personality, owned Waco, an English Bulldog, who had a habit of wandering their neighborhood. We know Waco had escaped from the yard in the morning of April 30, and the parties argued in person and via emails throughout the day about Waco's whereabouts.

We know Burke went to work at his radio show, met a client for dinner, and had a post-dinner performance at a local biker bar. By his own testimony, we know his anger towards his wife festered and increased during the day because, in his mind, Crossman was not making sufficient efforts to find Waco.[10]

We know Burke consumed some amount of alcohol and returned home intoxicated and angry after 10:00 p.m. that night.[11] Rather than looking for Waco,

---

[10] Pl.'s Ex. 24 ¶ 4.
[11] Pl.'s Ex. 26 at 13:4-14.

Burke immediately and angrily confronted Crossman. Crossman was lying unclothed on her bed with Charlotte. She never told Burke that Waco was home and on the patio. Instead, the parties argued.

Burke started aggressively yelling accusations at Crossman, getting angrier as the fight progressed. He then walked to the bedroom closet and got his gun loaded with at least one hollow point explosive bullet.[12] He next picked up Charlotte and threatened to shoot her to make Crossman feel what it was like to lose a dog.[13] Both parties' versions of the events confirm these facts—the parties were fighting when Burke held Charlotte and a gun threatening to shoot the dog in near proximity to Crossman lying in bed.

Here the stories diverge. Crossman says she was convinced Burke intended to kill her and Charlotte. She says he pointed the gun directly at her. She hid her head behind a newspaper crossword puzzle, knowing she was going to die.

Burke says he never intended to injure either Charlotte or Crossman. He just wanted to teach Crossman a lesson to watch Waco more closely. It is the next portion of Burke's testimony, however, that seems the most unbelievable. He contends that Charlotte started wiggling in his arms and the gun went off, perhaps because Charlotte's paw pulled the gun trigger.

Certainly, the gun exploded ejecting a hollow point bullet that traveled through Charlotte and, undisputedly, hit Crossman on the right side of her head causing critical

---

[12] Pl.'s Ex. 24 ¶ 7.
[13] Pl.'s Ex. 24 ¶¶ 7, 8.

injuries.[14] Crossman experienced a traumatic brain injury that rendered her permanently disabled and unable to work.[15] Charlotte also was seriously injured but lived, with both Crossman and Charlotte leaving their respective hospitals on May 6, 2009.

Burke was arrested, indicted, and later pled guilty to two counts: a violation of section 790.151(3) of the Florida Statutes (Using firearm while under the influence of alcoholic beverages, chemical substances, or controlled substances; penalties), and a violation of section 828.12(2) of the Florida Statutes (Cruelty to animals).[16] He served approximately six months in jail.

Crossman helped Burke during this period. She visited him in jail. She testified in his favor at a hearing to reduce his bond, at that time saying she did not think he intended to kill her. She went to therapy with him attempting a reconciliation in their marriage. They resumed living together for a brief time but eventually divorced.

In 2013, Crossman sued Burke in Florida state court asserting assault, battery, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.[17] The state court action remains pending.

On June 28, 2019, Burke filed for Chapter 7 Bankruptcy seeking to discharge his debts, including those due to Burke.[18] Crossman then filed this adversary

---

[14] Pl.'s Ex. 24 ¶ 7.
[15] Pl.'s Ex. 26 at 15:14-24.
[16] Pl.'s Compl. ¶ 13, Doc. No. 1. Def.'s Answer ¶ 13, Doc. No. 5.
[17] *Crossman v. Burke*, No. 2013-CA-5880 (Fla. 9th Cir. Ct. filed Apr. 29, 2013) (pending).
[18] Voluntary Pet. under Chapter 7, *In re Burke*, No. 6:19-bk-04254-KSJ (Bankr. M.D. Fla. June 28, 2019), Doc. No. 1.

proceeding asserting these debts are not dischargeable under § 523(a)(6) of the Bankruptcy Code.

Crossman and Burke told inconsistent stories at trial. And the burden of proof certainly rests with Crossman, the Plaintiff. to prove her case by a preponderance of the evidence. But, as the trier of fact, my job is to determine a witness's credibility.[19] After considering all the evidence and testimony, including all the speculation and inconsistencies in both parties' testimony, I find Crossman's testimony simply more credible.

Burke's testimony was not believable. He offered no *credible* version of the incident other than he acted intentionally when he got the loaded gun from his closet and fired it at his wife and her dog. I believe he truly regrets his behavior and wishes he had not shot his wife. But his explanation that the gun just went off or the dog's paw pulled the trigger is not believable.

Burke willfully and maliciously intended to cause Crossman intense emotional harm when he deliberately aimed the gun at Charlotte as he was standing near where Crossman was lying on her bed. He deliberately pulled the trigger sending a bullet through Charlotte's body and hitting his wife's head. While he may not have intended the *seriousness* of her injuries, he intentionally pointed a gun at her, he intentionally pulled the trigger, and he took an intentional action that was substantially certain to cause serious injury. He was angry. He was drunk. By his own testimony, he intended

---

[19] *In re Screen*, No. 04-40615, 2004 WL 6044674, at *1 (Bankr. S.D. Ga. Sept. 20, 2004) (citing *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994)).

to teach his wife a lesson about how hard it was to lose a dog. He wanted to cause her extreme emotional distress. He succeeded when he shot both the dog and his wife.

Because Burke willfully and maliciously acted to cause emotional and physical harm during the incident on April 30, 2009, I find any debt resulting from the physical and mental damage to the Plaintiff is not dischargeable under § 523(a)(6) of the Bankruptcy Code. A separate Final Judgment for the Plaintiff and against Burke shall simultaneously enter.

###

Attorney, Jennifer Aybar Karr, will serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.